## SIMPSON'S APPEAL.

Upon the application of E. S., late the widow of J. S., deceased, after her divorce from her second husband, M. T. S., for a writ of partition of certain lands, late the estate of J. S., her first husband, and then owned by W. A. T., under conveyances by the heirs at law of her first husband, the. said J. S.: it appeared, that the said E. S. had signed and given a receipt to the said W. A. T., for a certain sum which was agreed to be due to her, by a settlement or account stated in writing, and under which the said receipt was written, as the amount of dower due her out of the real estate of her first husband, J. S., for certain years, as therein specified: he, the said W. A. T., having purchased the same from F. B. S., deceased, the alienee of J. S. and W. B. S., her sons, by J. S., her said first husband: and that the said settlement or account stated, was made pursuant to an arrangement between the said J. S. and W. B. S., the sons of the said E. S., by which a substitute was provided in lieu of her dower; and where it also appeared by the testimony of a subscribing witness to the settlement and receipt, that the paper containing the same, was signed by E. S., the said widow, after much deliberation by her, her counsel, and her nephew, as a final settlement between the parties, in lieu of her dower, and in full of all claims by her against the said W. A. T., at that time, with the exception stated on the said paper: *Held*, that the receipt given by E. S. to W. A. T., fortified as it was by testimony, was a direct ratification of the arrangement between her sons, by which they provided a substitute for her dower, and having ratified it, and received a payment under it, she was estopped from contesting its validity, or claiming on inconsistent rights.

*May* 26. THIS was an appeal by Elizabeth Simpson, late Elizabeth Smith, the widow of James Smith, deceased, from the decree of the Orphans' Court of Centre county, refusing to award an inquest to make partition of certain lands, late the estate of the said James Smith, but then owned by William A. Thomas, under conveyances by the heirs at law of the said James Smith.

The facts of this case are so fully stated in Thomas *v.* Simpson, 3 Barr, 60, and in the opinion of the court below (WOODWARD, P. J.), which was generally assigned for error here, that, with the

exception of the settlement and receipt, and the testimony of Bond Valentine, a subscribing witness to the receipt, a further statement is considered unnecessary.

*Copy of Settlement and Receipt.*

Amount of money reserved by article of agreement dated the 30th day of March, 1832, between Franklin B. Smith and William B. Smith, and mentioned in the bond and mortgage given by F. B. Smith to William B. Smith, the interest of which is to be paid Mrs. E. Simpson, in lieu of dower, *pro ut* article, bond, and mortgage,     $2236.15½

Amount of money reserved by bond of William A. Thomas to Dr. John Harris, and mortgage dated 29th April, 1834, in trust, &c., interest of which to be paid in lieu of dower for purchase of James Smith—interest to Mrs. E. Simpson,     -    -    -    -    -    -     3000.00

The interest on these two sums was paid and liquidated by F. B. Smith's estate with James Smith's estate, up to the 1st of April, 1834, by report of referees—and the interest from the 1st of April, 1834, to 28th August, 1834, is unsettled, and remains due from William Thomas to the party entitled to receive—Mrs. Simpson claiming to be that party.

Interest in lieu of dower commencing on the 28th August, 1834, the date of the decree of divorce, E. Simpson *v.* M. T. S., and due on the 28th August, 1835—one year,                    $314.16

Interest on this sum from 28th August, 1834, to 8th June, 1837,     -    -    -    -    -     33.49

Due    do.        do.    28th August, 1836,    314.16

Interest on the same up to 8th June, 1837,     14.65

Due    do.        do.    28th August, 1837,     -    -    -    -    -     $314.16

Deduct 2 months 20 days' discount,     4.16

————    310.62

————
$986.62

" Received from William A. Thomas, nine hundred and eighty-six dollars and sixty-two cents, being the amount of dower due me on the real estate of my deceased husband, James Smith, from the 28th August, 1834, to the 28th August, 1837, he having purchased

the same from F. B. Smith, deceased, the alience of James Smith and William B. Smith, my sons—8th June, 1837.

Signed, ELIZABETH SIMPSON.

Witness—B. Valentine, W. W. Potter."

Testimony of Bond Valentine : " I was the counsel of William A. Thomas, and met with Wm. W. Potter, the counsel of Elizabeth Simpson, and her nephew, James Dunlap, who was acting as her friend and adviser also, and after conferring together for several days at intervals, the above described paper was executed by Elizabeth Simpson as a final settlement between the parties, in lieu of her dower, and in full of all claims which she made on William A. Thomas at the time, except the unsettled interest from the 1st April, 1834, to 28th of August, 1834, as stated in the paper executed by her as aforesaid. I further recollect that an ejectment was then pending, which was to be, and I believe was discontinued as part and parcel of the settlement between the parties. I believe also that the ejectment No. 85, of November, 1833, is the suit then pending, which was discontinued in pursuance of the said settlement, by her attorney, Wm. W. Potter.

" I did so understand that the above settlement was to be in lieu of her dower, and to establish the sum to be paid in future in lieu of her dower, and that such was the agreement and understanding of the parties."

*Opinion of the Court.*—" This is an application by Mrs. Simpson, as the widow of James Smith, for a writ of partition in respect to certain lands late the estate of said James Smith, and now in the occupancy and tenure of William A. Thomas and several other persons named in her original partition. It being alleged on the part of these persons that Mrs. Simpson joined her husband in his lifetime, in a conveyance of the lands claimed by them, she confesses the truth of the allegation, and thus admits her dower in these lands to be barred. Upon the pleadings of the parties, the only question that remains is, shall Mrs. Simpson have a writ of partition in respect to the estate of which her husband died seised, and which is now held by William A. Thomas under conveyances by the heirs at law of James Smith.

" Notwithstanding the will of James Smith, cited in Thomas *v.* Simpson, 3 Barr, 60, it is to be assumed that he died intestate as to the property in which his widow now claims dower. I think it may fairly be inferred from that case, that such was the opinion

of the Supreme Court on this point, and it is necessary for this court to assume it to enable them to entertain the widow's application.

"Is then a writ of partition a matter of right? Are we bound to award it in every case as a matter of course, where it is applied for by a widow? The 36th section of the act of 1832, relating to Orphans' Courts, declares that the Orphans' Court of the proper county '*shall have power*, on the application of a widow or any lineal descendant of the decedent *having an interest in such real estate*,' to appoint and award an inquest. I take it that the limitation of '*interest*' applies as well to the widow as to the lineal descendants of the decedent: for certainly she is as competent to divest her interest, by acts after the death of her husband and before partition, as the heirs are. Where the widow's interest and her right to have partition are denied, the question must be tried at some stage of the proceedings, and I can see no reason why it should not be tried upon the application for the writ, as well as upon exceptions to the inquest after its return. The practice of awarding an inquest as a matter of course, without further inquiry on the part of the court, even under the act of 1794, which contained no limitation as is expressed in the act of 1832, was reproved by C. J. Tilghman in Rex *v.* Rex, 3 S. & R. 535. If the facts alleged are of such a nature that the inquisition can throw no light upon them, nor assist the conscience of the court, it seems to me to be the better practice to try them *in limine*, and thus save the parties the costs of an inquisition which if taken would be quashed.

"Supposing it then proper for us to inquire, at this time, whether Mrs. Simpson is entitled to have a writ of partition against Mr. Thomas, with a view of obtaining her dower, and regarding her as the widow of James Smith, who died sole seised, and in the exclusive occupancy of the premises set out in her petition and intestate, what reasons have been assigned against granting her prayer?

"In the first place, it is alleged by the respondent, and not denied on the part of the petitioner, that being joined in marriage to one Michael T. Simpson about the year 1810 or 1811, two or three years after the death of her former husband, Smith, a judgment was recovered against Simpson, and his curtesy in her dower was seised in execution, and on the 25th day of December, 1822, sold by the sheriff to James Smith, to whom the sheriff made his deed on the 28th April, 1823. Her marriage with Simpson subsisted until the 28th day of August, 1834, when she was divorced; and it is claimed on the part of the respondent that the sheriff's

sale divested all her rights of dower during the coverture with Simpson, and so undoubtedly is the opinion of the Supreme Court in the case in 3 Barr, already referred to. As to that period from 1810 or 1811, to 28th day of August, 1834, the admitted facts in the case raise a legal bar to her right of dower, and establish, beyond a peradventure, that she is not a widow of the decedent, 'having an interest in such real estate.'

"In the next place, the paper of 8th June, 1837, which is in evidence before us, which may be read in print in 3 Barr, 62, is relied on as a commutation of her dower, in consideration of which she released all her interest in the premises in question. It does not appear that Mrs. Simpson was originally a party to the arrangement made by her son James in his sale to Franklin B. Smith, and she would not be bound by that arrangement, unless she adopted it and made it obligatory upon her by her own voluntary act. It is claimed that she did this by her signature to the paper of 8th June, 1837. In one part of her replication she puts the legal effect of this paper in issue by denying that she ever 'entered into a legal, valid, and binding agreement, or into any agreement of any kind, to accept the annual interest of the said sum of $2,236.15, for and during her natural life, in satisfaction of her dower in the estate of her former husband, James Smith, or of any part thereof;' and in another part she must be understood as placing her construction upon this paper as a receipt for her dower from the 28th August, 1834, to the 1st of August, 1837. The 28th August, 1837, was probably intended to have been written.

"I have seen this paper before. On the trial of the dower suit, Simpson v. Thomas, it was in evidence, unsupported by any collateral proof; and, under the earnest complaints of Mrs. Simpson, by her counsel, that it was fraudulent when used for anything more than as a receipt for the money acknowledged in it to be paid to her, it was difficult to divest the mind of a suspicion that she may have been overreached. Indeed, the foldings of the paper showed that she may have signed it as a receipt, in utter ignorance that it contained any other words than those which properly constitute the receipt. But all difficulty on this point is now removed by the testimony of Bond Valentine, who describes the great deliberation with which that paper was settled and executed by Mrs. Simpson, with the aid of her counsel, Mr. Potter, and of her nephew, James Dunlap, Esq., 'as a *final settlement between the parties in lieu of her dower, and in full of all claims which she made on William A. Thomas at the time, except the unsettled interest from the 1st of*

*April*, 1834, *to the* 28*th of August*, 1834, *as stated in the paper executed by her as aforesaid.*'

"There is nothing in the testimony of Mr. Blanchard, taken on the part of the petitioner, to contradict Mr. Valentine; and no issue has been asked to try the validity of this paper before a jury. That the allegations of the petitioner raise matter for an issue proper for a jury, I agree, and that we have power to send issues to the Common Pleas for the trial of disputed facts, is beyond a doubt; but no issue has been asked for in this case, and no *evidence* of disputed facts has been exhibited or even alleged. The respondent has introduced the facts sworn to by Mr. Valentine. The petitioner does, indeed, object to the competency of the proof; but exhibits no countervailing facts, nor alleges that she has any to exhibit, so that the court will not direct an issue. Taking, then, the paper to have been fairly executed by Mrs. Simpson, for all that it contained, I have no difficulty in deciding that its legal effect is more than a mere receipt for money. It sets out with an express reference to the article, bond, or mortgage, between Franklin B. Smith and William B. Smith, by which the sum of $2,236.15 had been charged on the estate, '*the interest of which is to be paid Mrs. E. Simpson in lieu of dower.*' Then the bond and mortgage of William Thomas to Dr. Harris, charging $3,000 in '*lieu of dower,*' is distinctly stated. Then the fact that the interest on these two sums had been liquidated with the estate of James Smith, the sheriff's vendee of Simpson's interest, up to the 1st of April, 1834, and that the interest from that date to 28th August, 1834, was unsettled, are fully expressed. Then follows a calculation of '*interest in lieu of dower,*' commencing on the 28th August, 1834, and resulting in the sum of $986.62, for which the receipt was given.

"Placing her signature to such a paper, with a full knowledge of the contents and references, after mature deliberation, and with the advice of counsel fully informed in the premises, was an express recognition and ratification of the arrangement made by her sons to secure her dower after discoverture from Simpson. Thomas had invested money on the faith of that arrangement, and now she ratifies and confirms it—she makes it her own—she receives his money in pursuance of it, and if Mrs. Simpson can be bound, she must submit to this self-imposed arrangement. Such is the effect of this paper, if words and figures have not lost all power. Her receipt of money from Mr. Thomas for several years in pursuance of it, was further ratification of the arrangement, and made assu-

rance doubly sure. Has Mrs. Simpson any longer an interest in the real estate of her husband, except as secured by the bonds and mortgage of Thomas? Clearly not. She has accepted them in 'lieu of her dower'—these are her express words. Her dower is given up by her own deliberate act for a chosen and probably a reasonable equivalent, and she is not entitled to have partition of the estate. Why award her a writ of partition when she is shown to have surrendered its fruits for an equivalent which she holds? What could she acquire by it? Until she should impeach and overthrow the agreement of June, 1837, she could never have her dower assigned her, and the writ she prays for would accomplish no other purpose than to harass Thomas and load his estate with unnecessary costs.

"These two objections, therefore, the sheriff's sale and the settlement of June, 1837, seem to be substantial reasons for denying the party the process which the act of 1832 *empowers*, but does not enjoin us to award. And they cover the whole ground. As to the two years or more which elapsed from the death of her first husband to her marriage with the second, I have no reluctance to bar her by force of the paper of June 8, 1837, in view of the fact that she retained the possession and enjoyed the profits of the estate. She has no equity to call upon an alienee of the heirs at law for her dower, during a period when she had the whole estate in her possession, without account. And as to the unsettled interest from the 1st of April, 1834, to 28th August, 1834, it is manifest, since the Supreme Court has given effect to the sheriff's sale, that Mrs. Simpson has no right whatever to this interest, but that it belongs to the estate of her deceased son, James Smith. So that the two objections taken on the part of the respondent are well sustained, and the showing of the parties establishes the conclusion that Mrs. Simpson has not such an interest in the real estate of the decedent, as to entitle her, under the act of 1832, to an inquest of partition.

"The objection that is stated in the replication of the petitioner to the reception of the deposition of Bond Valentine, and to the effect of it, may be sufficiently disposed of, by saying that the Orphans' Court, sitting as a court of chancery, is not bound by the technical rules of evidence: per Huston, J., in Sterret's Appeal, 2 Penn. Rep. 420; or by pointing to the fact, that the manner and circumstances of the execution of the paper of 1837, as proved by Mr. Valentine, would be strictly legal evidence, and that a just construction of the contents of the paper itself, sustains the conclusion

S

that we have expressed.   Nor can it reasonably be objected, that the court has proceeded on the assumption that the facts proved are true, since no issue has been demanded for the trial of them.   In the case of Spangler *v.* Rambler, 4 S. & R. 192, the Orphans' Court received proof of facts and passed on them without the aid of a jury, in a question of confirming an inquisition in partition, and refused to confirm it, and did actually set it aside, on grounds which, if they had been disclosed at the proper time, would have justified the court in refusing to award an inquest.

"Believing that every material point, raised in the altercations of the parties, has been sufficiently noticed, the petition of the petitioner is dismissed."

The errors assigned here were, that the court erred in giving any legal effect to the testimony of Bond Valentine ; in their construction of the receipt of Elizabeth Simpson ; in the general doctrines advanced in their opinion on the case ; in saying, that, "believing that every material point raised in the altercations of the parties has been sufficiently noticed, the petition of the petitioner is dismissed ;" and in dismissing the petition and refusing to award an inquest.

*Fisher,* for appellant.

*Burnside* and *Macallister,* contrà, were stopped by the court.

PER CURIAM. — The receipt given by Mrs. Simpson to Mr. Thomas, fortified as it was by the testimony of Bond Valentine, was a direct ratification of the arrangement between her sons, by which they provided a substitute for her dower.   Having ratified it, and received a payment under it, she is estopped from contesting its validity or claiming on inconsistent rights.